UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

REGIONS BANK,

     Plaintiff,

vs.

NBV LOAN ACQUISITION MEMBER, LLC,
ALLEN R. GREENWALD,
SCOTT A. GREENWALD, individually and as Trustee of
the Greenwald Family Trust and Greenwald Dynasty Trust,
AMY S. GREENWALD, individually and as Trustee of
the Greenwald Family Trust and Greenwald Dynasty Trust,
BILLY'S CREEK PRESERVE, L.L.C., and
GFS, CORP.,

     Defendants.

_____/

## COMPLAINT

Plaintiff Regions Bank ("Regions") sues NBV Loan Acquisition Member, LLC ("NBV Member"), Allen R. Greenwald ("Allen"), Scott A. Greenwald ("Scott"), individually and as Co-Trustee of the Greenwald Family Trust ("Family Trust") and Greenwald Dynasty Trust ("Dynasty Trust"), Amy S. Greenwald ("Amy"), individually and as Co-Trustee of the Family Trust and Dynasty Trust, Billy's Creek Preserve, L.L.C. ("Billy's Creek") and GFS, Corp. ("GFS") and avers:

### Parties, Jurisdiction and Venue

1.    This is an action for equitable relief and damages to recover amounts owing Regions under a Supplemental Final Judgment entered by the Bankruptcy Court in Adversary Proceeding No. 16-1754-AJC ("Underlying Action") arising from a bankruptcy case pending in

1

this District styled *In re Lexi Development Company, Inc.*, Case No. 10-27573-AJC, Chapter 11 ("Lexi Bankruptcy Case").

2.      Regions is a banking corporation organized and existing under the laws of Alabama, with its principal place of business in Birmingham, Alabama.  Regions is a citizen of Alabama.

3.      NBV Member is a limited liability company organized and existing under the laws of Florida, whose sole member is Allen, a citizen of Florida.  NBV Member is a citizen of Florida.

4.      Allen is an individual domiciled in Miami, Florida, and is a citizen of Florida.

5.      Scott is an individual domiciled in Miami, Florida, and is a citizen of Florida.

6.      Scott is the Co-Trustee of the (a) Family Trust pursuant to the Trust Agreement dated April 13, 2016, and (b) Dynasty Trust pursuant to the Trust Agreement dated April 13, 2016.

7.      Amy is an individual domiciled in Miami, Florida, and is a citizen of Florida.

8.      Amy is the Co-Trustee of the (a) Family Trust pursuant to the Trust Agreement dated April 13, 2016, and (b) Dynasty Trust pursuant to the Trust Agreement dated April 13, 2016.

9.      The Family Trust is a traditional trust.  As Scott and Amy are both citizens of Florida, the Family Trust is a citizen of Florida.

10.     The Dynasty Trust is a traditional trust.  As Scott and Amy are both citizens of Florida, the Dynasty Trust is a citizen of Florida.

11.     Billy's Creek is a limited liability company organized and existing under the laws of Florida, whose members are citizens of states other than Alabama, and therefore, Billy's Creek is a citizen of a state other than Alabama.

12.     GFS is a corporation organized and existing under the laws of Florida, with its principal place of business in Miami, Florida.  GFS is a citizen of Florida.

2

13.     The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between Regions, a citizen of Alabama, and defendants, citizens of Florida or states other than Alabama.

14.     Venue is appropriate pursuant to (a) 28 U.S.C. § 1391(b)(2) as a substantial part of the events in question giving rise to the claims occurred, or a substantial part of the property that is the subject of this action is situated in this district, or (b) § 1391(b)(3) because one or more defendants is subject to the Court's personal jurisdiction with respect to this action.

## Facts

### Derivation of Regions' Claim

15.     Since November 18, 2016, Regions has possessed a "Claim," as defined in Fla. Stat. § 726.102(4),[1] against non-party NBV Loan Acquisition, LLC ("NBV") arising from the service of an Amended Proposal of Settlement ("PFS") in the Underlying Action.

16.     NBV did not accept and thus rejected the PFS.  NBV's claim against Regions was tried, resulting in a Final Judgment in favor of Regions.  This activated the PFS, and ultimately the Bankruptcy Court entered a Supplemental Final Judgment for reasonable attorneys' fees and costs in favor of Regions and against NBV.

### Events Leading to Regions' Claim and the Supplemental Final Judgment

### The Greenwald Borrowings

17.     At all material times, Allen and Scott were real estate developers operating through their company, The Greenwald Group.

---

[1]  All references to statutes are to the Florida Statutes in effect during the period at issue.

3

18.     In December 2005, Scott began to develop The Lexi, a high-rise condominium development in North Bay Village, Florida.  In connection with that project, Lexi Development Company, Inc. ("Lexi") borrowed approximately $56 million ("Senior Loan") from Regions and other banks (collectively, "Bank Group").

19.     On December 5, 2005, the same date as the Senior Loan, Lexi also borrowed $6 million from Scott's parents, Allen and Jill Greenwald ("Jill") ("Junior Loan"), to fund project costs.  The Bank Group, Allen and Jill entered into an Intercreditor Agreement ("ICA") in connection with the Senior and Junior Loans.

20.     The Junior Loan was secured by Lexi's stock and guaranteed in full by Scott and Amy under their Unlimited, Continuing and Unconditional Guaranty ("Unlimited Guaranty").

21.     To fund the Junior Loan, Allen and Jill borrowed $6 million ("GFB-Lexi Loan") from Great Florida Bank ("GFB").  The GFB-Lexi Loan was secured by a collateral assignment of Allen's and Jill's shares in Lexi and the Junior Loan documents, including Scott's and Amy's Unlimited Guaranty.

22.     On June 23, 2008, Regions and Lexi modified the Senior Loan, effective as of April 5, 2008, extending the Senior Loan maturity to April 5, 2009 and requiring, *inter alia*, that Lexi fund a collateral account with $2 million, to be held by Regions.

23.     Lexi obtained the collateral account funds through a $2 million advance under the Junior Loan, which Allen and Jill in turn borrowed under the GFB-Lexi Loan, increasing the outstanding principal balances on both the Junior Loan and GFB-Lexi Loan to $8 million, the latter evidenced by an Amended and Restated Promissory Note in favor of GFB ("Amended GFB-Lexi Note").

24.     Scott and Amy ratified their Unlimited Guaranty of the Junior Loan.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

25.     On November 5, 2009, the Greenwalds restructured their debts to GFB.  In pertinent part:

(a)     The Amended GFB-Lexi Note was split into Notes A and B, each for $4 million, and providing that if Note A were timely paid, then Note B would be forgiven, subject to certain conditions.

(b)     Allen and Jill executed and delivered to GFB the Second Amended and Restated Promissory Note in the original principal amount of $4,000,000 ("Note A") and the Second Amended and Restated Promissory Note in the original principal amount of $4,000,000 ("Note B").

(c)     Scott and Amy again ratified their Unlimited Guaranty of the Junior Loan.

(d)     As further security and inducement to GFB to restructure the GFB-Lexi Loan, Scott and Amy executed and delivered a Limited Guaranty of Payment and Performance to GFB, which unconditionally and irrevocably guaranteed repayment of Note A up to a maximum amount of $3,275,000.

26.     Effective February 1, 2011, Allen and Jill executed and delivered to GFB third amended and restated Notes A and B in the principal amounts of $4 million each.

27.     On June 20, 2011, Scott and Amy ratified their Limited Guaranty of Note A.

28.     Effective June 30, 2012: (a) Allen executed and delivered to GFB fourth amended and restated Notes A and B in the principal amounts of $4 million each; and (b) Scott and Amy ratified their Limited Guaranty of Note A.

29.     On January 28, 2014, the Greenwalds again restructured their debts with GFB.  In pertinent part:

5

(a)    Allen, Jill, Scott, Amy and certain Greenwald entities entered into a Settlement as to Ongoing Obligations and Mutual Release ("2014 Settlement"), by which GFB released and satisfied obligations of other Greenwald entities.

(b)    Through the 2014 Settlement, Allen, Jill, Scott and Amy ratified and reaffirmed all obligations, loan documents and collateral for Notes A and B, including "all collateral guaranties," which remained extant.

(c)    Scott and Amy ratified their Limited Guaranty of Note A.

(d)    To secure the Limited Guaranty, Billy's Creek granted a mortgage on a parcel of real property located in Fort Myers, Florida up to a maximum amount of $400,000.

**Improper Formation and Use of NBV to Purchase Greenwald Family Debt to Sue Regions**

30.    By approximately September 2015, Florida Community Bank ("FCB") had succeeded to the interests of GFB and was demanding payment of Note A.

31.    Around that time, Allen retained Fort Lauderdale attorney Eric Salpeter ("Salpeter") to form NBV for the purpose of purchasing the Greenwald family's debt from FCB for the benefit of, and without revealing the interest of, Allen.

32.    Allen's purpose was to defraud and mislead FCB into selling Allen his own debt at a discount.  Allen wanted to acquire FCB's claim so he could pursue it against the Bank Group.  As Allen testified in the Underlying Action, he would, in his discretion, either recover from Regions or not at all.

33.    Before GFB asserted the claim against Regions, Scott had encouraged GFB to bring the claim.  Eventually, Allen amended the claim and verified it.  Following trial, the Bankruptcy Court found that Allen and Scott, the "opportunistic obligor and guarantor" of the GFB-Lexi Loan, had contrived the claim against Regions.  The Bankruptcy Court concluded that the claim for

6

damages against Regions was without merit, lacking even a "scintilla" of evidence of damages proximately caused by Regions' breach of the ICA.  Allen's misuse of NBV to acquire and prosecute the claim harmed Regions, which expended millions to show that Allen and Scott had "contrived" the claim from inception, as found by the Bankruptcy Court, and subsequent conduct by Allen to ensure that NBV lacked any assets to respond to a judgment for damages resulting from the non-acceptance of the PFS

34.     On September 17, 2015, to effectuate the fraudulent scheme, Salpeter formed NBV in Delaware because it permits anonymous LLCs and does not require disclosure of its beneficial owners.  At the time of NBV's formation, it did not issue any certificates indicating any members.  Despite any documents submitted to Delaware to the contrary, Allen was NBV's undisclosed beneficial owner and controlled its operations.

35.     On that same day, Allen began his fraudulent efforts to use NBV to purchase his own debt from FCB at a discount without disclosing that he was the buyer.  Labelling himself as the "authorized representative" of the newly-formed NBV, Salpeter sent a letter to FCB offering to purchase all the Greenwald-related loans, including Notes A and B, all guaranties and all collateral pledges, for the discounted sum of $3.5 million.  In accordance with Allen's directive, Salpeter concealed Allen's interest in NBV.

36.     On November 13, 2015, Salpeter, as the "authorized agent" of NBV, sent a second letter to FCB with a revised offer to purchase the Greenwald debt for a net purchase price of $3.85 million.

37.     Four days later, on November 17, 2015, Salpeter, again as the "authorized agent", sent NBV's "Final Offer" to purchase the Greenwald debt for a net purchase price of $3.9 million.  FCB accepted the offer the following day.

7

38.     Salpeter never disclosed to FCB that NBV was beneficially owned and controlled by Allen, or that Allen had any interest in NBV whatsoever.  FCB was not aware that Allen owned and controlled NBV.

39.     Salpeter served as Allen's strawman in the purchase transaction.  Salpeter testified in the Underlying Action that he was only involved "[v]ery tangentially" and had "little to nothing" to do with the negotiations, but "was pretty much told what the terms would be."  And consistent with this role, Salpeter—not Allen—met with FCB to discuss the purchase "as an agent of NBV," not its attorney.

40.     On December 17, 2015, NBV closed the acquisition with FCB and the parties entered into an Assignment and Assumption of Loan, Loan Documents and Claims ("2015 Assignment"), which was signed by Salpeter as Manager of NBV.

41.     FCB accepted $4 million, the outstanding principal on Note A, which was payable as follows: $3.25 million in cash, release of a $500,000 deposit, and a $250,000 promissory note from NBV, which would be discounted to $150,000 if paid within a year.  Accordingly, the discounted purchase price was $3.9 million.  In exchange, FCB conveyed the following debts and claims to NBV:

(a)     The GFB-Lexi Loan documents, including Notes A and B, Scott and Amy's Limited Guaranty and ratifications, and collateral documents;

(b)     The Junior Loan documents, including Scott and Amy's Unlimited Guaranty and ratifications;

(c)     The 2014 Settlement documents, including Billy's Creek Mortgage;

(d)     Allonges to Notes A and B by FCB in favor of NBV; and

8

(e)     All claims asserted by FCB in the following cases: (i) *In re Lexi Development Company, Inc.*, Bankruptcy Case No. 10-27573-BKC-AJC and Adv. Pro. No. 10-3582-AJC (collectively, "Lexi Bankruptcy"); (ii) *Great Florida Bank v. Lexi Development Company, Inc., Regions Bank, Fifth Third Bank, N.A., Banco Popular North America, Bank Midwest, N.A., and Lexi North Bay, LLC*, Miami-Dade County Circuit Court Case No. 09-45018 (the "State Court Action"); and (iii) related appeals and proceedings.

42.     As a condition to close the transaction, FCB required that NBV provide a Limited Liability Company Borrowing Resolution ("LLC Resolution") identifying, *inter alia*, all of NBV's managers and members.

43.     In order to continue Allen's fraudulent concealment of his interest in NBV, on December 17, 2015, Salpeter formed NBV Member in Florida.  Salpeter then signed the LLC Resolution as "Trustee, Manager" for NBV and "Trustee" for NBV Member, the sole member of NBV.  NBV further represented, warranted and certified to FCB that NBV Member was the sole member of NBV, and Salpeter, as Trustee, was NBV's sole manager.

44.     Despite Salpeter's describing himself as "Trustee" in his representations to FCB, no Trust existed.

45.     Although Scott and Amy agreed to the 2015 Assignment in their capacity as Guarantors, and Allen and Jill as Borrowers, none of the documents disclosed that NBV was really Allen, and FCB was selling Allen's own debts to Allen for a discount.

46.     Allen's and Salpeter's duplicity continued in the Lexi Bankruptcy.  On December 29, 2015, FCB moved to substitute NBV as party of record in the Lexi Bankruptcy.  The motion attached a stipulation signed by Salpeter as "sole Manager" of NBV and again did not disclose Allen's involvement.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

47.     On January 6, 2016, Salpeter and Allen signed articles of amendment to NBV Member's Florida filing, replacing Allen for Salpeter as member and manager of NBV Member. However, despite preparing the amendment, Salpeter did not submit the form.  Instead, Salpeter waited until January 19, 2016, after the Bankruptcy Court, the Honorable Judge A. Jay Cristol, approved NBV's substitution, before finally submitting the amendment to the Florida Secretary of State and disclosing publicly for the first time that Allen controlled NBV.

48.     NBV is an empty shell, dominated and controlled by Allen.  NBV has no bank accounts.  Instead, to avoid creditors, such as Regions, Allen caused NBV to conduct its financial transactions through a bank account with Marquis Bank in the name of NBV Member.

49.     Allen formed and operated NBV to mislead and defraud creditors, including Regions.

50.     NBV has not issued membership certificates, does not file tax returns and reports no income or expenses of its own.  Instead, all income and expenses are claimed by NBV Member and reported on Allen's personal tax returns.

51.     NBV Member has not issued any membership certificates and does not file tax returns.

52.     Allen used NBV and NBV Member as his personal piggy bank and caused funds to be put into and taken out of NBV Member's bank account for personal, rather than corporate, purposes and, as set forth below, has caused NBV Member to fraudulently distribute NBV's funds to Allen's family and affiliate entities for no value.

**The Underlying Action**

53.     In 2010, GFB sued the Bank Group for damages in Miami-Dade Circuit Court, claiming breach of the ICA for failing to provide notice of Lexi's default to the Allen and Jill

10

Greenwald and GFB between October and December 2012, as a result of which GFB could not exercise its right to purchase or cure the default under the Senior Loan.

54.     Following the closing of the 2015 Assignment, NBV substituted in place of GFB in the Underlying Action, and on August 26, 2016, NBV filed the Verified Amended Complaint against the Bank Group, verified by Allen, which reiterated GFB's claim.

55.     In December 2016, NBV filed its Verified Amendment to NBV's Verified Amended Complaint asserting a claim against Lexi on the GFB-Lexi Loan then in default and seeking $8 million plus costs, interest and attorneys' fees.

56.     On November 18, 2016, Regions served the PFS on NBV in the Underlying Action pursuant to § 768.79 and Fla. R. Civ. P. 1.442.

57.     On December 29, 2016, Lexi removed the Underlying Action to the Bankruptcy Court as related to the Lexi Bankruptcy.

58.     Over 11 days between January 22 and March 15, 2019, the Bankruptcy Court conducted a bench trial on NBV's claim for damages against Regions for breach of the ICA.[2] During trial, the Bankruptcy Court expressed skepticism of NBV's damages theory.

59.     On June 7, 2019, the Bankruptcy Court entered Findings of Fact and Conclusions of Law, which rejected NBV's claim, finding that "NBV cannot recover at all against Regions on any damage theory because Regions' failure to provide copies of the default notices to GFB did not cause nonpayment of the GFB-Lexi Loan or any other loss or damage that [NBV] claim[ed]"; and "the evidence established that Regions acted in the best of good faith" and "acted in good faith in an effort to work out the financial distress caused by the economic downturn." The Bankruptcy

_____

[2]  NBV had previously settled with the other members of the Bank Group.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

Court found "not a scintilla of evidence prov[ing] that any damages to [NBV] were caused by its not receiving the default notice required by the ICA."

60.    The Bankruptcy Court also found that GFB rejected numerous opportunities to cure Lexi's default or purchase the Senior Loan, and both GFB and later NBV never sought to mitigate any potential loss by seeking to collect from the Greenwalds, who were the obligors and guarantors of the GFB-Lexi Loan debt.  The Bankruptcy Court rejected the testimony of certain of NBV's witnesses, including Scott, who lack[ed] credibility and sincerity."

61.    The Bankruptcy Court further found that Scott and Allen had concealed their involvement with NBV from FCB to provide "better bargaining ability in [NBV's] purchase of the [GFB-Lexi Loan and related items]" and observed "a bad smell here."

62.    The Bankruptcy Court also found that NBV's claim against Regions was "contrived" by Allen and Scott, the "opportunistic obligor and guarantor" of the GFB-Lexi Loan.

63.    On June 7, 2019, the Bankruptcy Court entered Final Judgment

(a)    for Regions on NBV's claim, thus triggering the PFS; and

(b)    for NBV against Lexi for $14,629,325 stipulated to at trial.

64.    On January 23, 2020, the Bankruptcy Court entered a Supplemental Final Judgment against NBV and in favor of Regions for $3,736,606.10 representing reasonable attorneys' fees and costs incurred by Regions in connection with the Underlying Action ("Supplemental Final Judgment").

65.    On March 22, 2021, following NBV's appeal, the District Court affirmed the Final Judgment in favor of Regions on NBV's claim.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

**Post-PFS Fraudulent Transfers**

66.     Following service of the PFS, the Greenwald family—Allen, Scott and Amy— engaged in a series of transactions designed to ensure that NBV would be judgment-proof if the PFS were activated.

67.     On October 24, 2017, Allen caused NBV Member to transfer funds belonging to NBV as follows: (a) $2,000,000 to the Dynasty Trust; (b) $330,641.33 to the Family Trust; (c) $200,000 to Scott; and (d) $16,000 to Scott and Amy.  The transferees provided no value for these transfers, either to NBV Member or NBV.

68.     In June 2018, NBV entered into a Mediated Settlement Agreement with the other members of the Bank Group, Popular Bank, Armed Forces Bank, N.A. and Fifth Third Bank, N.A. ("Settling Banks") settling NBV's claim for $825,000.

69.     On July 16, 2018, the Bankruptcy Court approved the settlement and the Settling Banks collectively wired $825,000.34 to the trust account of Friedman & Frost, P.L. ("F&F"), the firm representing NBV.  F&F retained $300,409.69 for legal fees and pursuant to Allen's instructions, remitted the balance of $524,590.65 to NBV Member, for which no value was provided to NBV.

70.     Of the $524,590.65, Allen caused NBV Member to fraudulently transfer $410,000 to the Greenwald family and affiliate entities as follows:

(a)     on July 24, 2018, $100,000 to GFS;

(b)     on July 26, 2018, $250,000 to GFS; and

(c)     on August 21, 2018, $60,000 to the Family Trust.

13

71.     On September 7, 2018, NBV recorded a Satisfaction of Florida Real Estate Mortgage, Assignment of Leases and Rents and Security Agreement with respect to Billy's Creek Mortgage ("Billy's Creek Satisfaction").

72.     NBV received no value or other consideration in exchange for the Billy's Creek Satisfaction.

73.     Neither NBV nor NBV Member received any value in exchange for these transfers.

**Allen's Use of NBV and NBV Member as Piggy Bank to Pay Personal Legal Fees**

74.     In December 2016, Allen retained Aaronson, Schantz & Beiley, P.A. ("ASB") to represent him personally in connection with a discovery request served by Regions in the Underlying Action.  ASB did not represent NBV (which was represented by F&F) or NBV Member, and ASB's services were provided solely to or for the benefit of Allen and his family.

75.     Between April and June 2018, ASB invoiced Allen for services "rendered … for Allen" totaling $14,308.70.  On August 8, 2018, Allen caused NBV Member to use NBV's funds to pay the invoice to ASB.  NBV Member paid ASB with the funds beneficially owned by NBV, and which had been fraudulently placed in NBV Member's hands at the direction of Allen.

76.     On October 14, 2018, Allen caused NBV Member to transfer another $20,000 to ASB for which no services had been provided.  Again, the funds were beneficially owned by NBV, not NBV Member.

77.     Neither NBV nor NBV Member received any benefit from ASB's legal services rendered in favor of Allen and the Greenwald Family or the payment of $20,000 to ASB.

14

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

**<u>Post-Trial Fraudulent Transfers</u>**

78.     In anticipation of the Bankruptcy Court's forthcoming adverse trial ruling on NBV's claim and Regions' enforcing the PFS, Allen and the Greenwald family collaborated to conduct another fraudulent transfer to Regions' detriment.

79.     On April 2, 2019, approximately two weeks after the trial concluded, NBV, Allen (on behalf of himself and his wife's Estate),[3] Scott and Amy entered into a Settlement As To Ongoing Obligations and Mutual Release ("NBV-Greenwald Release").

80.     Reciting consideration of $10.00, the NBV-Greenwald Release purports to release, satisfy and forever discharge all obligations of and collateral pledged by the Greenwald family to NBV under the assigned GFB-Lexi Loan and all instruments.[4]

81.     Allen also directed his assistant, Susan Robinson, to mark, *inter alia*, the following documents as "VOID":

     (a)     Notes A and B;

     (b)     Allonges to Notes A and B executed by FCB on December 18, 2015;

     (c)     Scott's and Amy's ratifications of their Unlimited Guaranty dated May 31, 2018 and November 5, 2009;

     (d)     Scott's and Amy's Limited Guaranty, as well as their ratifications of the Limited Guaranty dated June 20, 2011, June 30, 2012, and January 28, 2014.

82.     The NBV-Greenwald Release expressly excludes NBV's Final Judgment against Lexi of $14,628,325.

---

[3]  Jill had passed.

[4]  Including the Billy's Creek Mortgage NBV previously satisfied of record in September 2018.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

83.     NBV received less than a reasonably equivalent value in exchange for delivering the NBV-Greenwald Release.

84.     All conditions precedent to this action have occurred.

## Count I
## Liability for Supplemental Final Judgment against NBV Member and Allen

85.     Regions reavers paragraphs 1-4, 13-65, 74-77 and 84 in support of this count.

86.     This count seeks declaratory judgment, pursuant to 28 U.S.C. § 2201, that NBV Member and Allen are liable for all amounts owing under the Supplemental Final Judgment to Regions.

87.     NBV is a mere instrumentality or alter ego of NBV Member and, in turn, Allen. NBV observed no corporate formalities and was fraudulently formed and operated to benefit Allen personally to the detriment of Regions.

88.     From inception, NBV was an undercapitalized shell company, which used NBV Member to hold NBV's funds.

89.     NBV Member is also a mere instrumentality and alter ego of Allen.  Allen caused NBV Member to be formed well after NBV was formed solely to show FCB that NBV had a member other than Allen.  Allen formed and used NBV Member for a fraudulent purpose.

90.     Allen formed and used these entities to conceal his involvement in the surreptitious purchase of the Greenwald family debt to FCB and to gain control of GFB's claim against Regions, which had been contrived by Allen and Scott, causing Regions to expend millions to defend against the contrived claim, and to shield assets from the claims of NBV's creditors, including Regions. Allen also used NBV Member as the financial proxy for NBV to ensure that NBV did not hold assets that could be used to satisfy claims of actual or prospective creditors, principally Regions.

91.     Allen's and NBV Member's fraudulent conduct caused harm to Regions.

16

92.     The corporate veil of NBV should be disregarded and Allen and NBV Member should be adjudged liable, jointly and severally, for the Supplemental Final Judgment.

## Count II
### Claim against Dynasty Trust Pursuant to § 726.105(1)(a)
### (Actual Fraudulent Transfer)

93.     Regions reavers paragraphs 1-2, 5-8, 10, 13-67, and 84 in support of this count.

94.     This count seeks to avoid and recover an actual fraudulent transfer to the Dynasty Trust pursuant to §§ 726.105(1)(a) and 726.108(1)(a) and (c)3.

95.     NBV Member's transfer of NBV's funds of $2,000,000 to the Dynasty Trust was fraudulent as to Regions, whose Claim arose before the transfer was made, because NBV caused NBV Member to make the transfer with actual intent to hinder, delay or defraud Regions.

96.     Pursuant to § 726.108(1)(a) and (c)3., Regions is entitled to the avoidance of the transfer and damages against the Dynasty Trust for the amount received, plus interest and costs.

## Count III
### Claim against Dynasty Trust Pursuant to § 726.105(1)(b)
### (Constructive Fraudulent Transfer)

97.     Regions reavers paragraphs 1-2, 5-8, 10, 13-67, and 84 in support of this count.

98.     This count seeks to avoid and recover a constructive fraudulent transfer to the Dynasty Trust pursuant to §§ 726.105(1)(b) and 726.108(1)(a) and (c)3.

99.     NBV Member's transfer of NBV's funds of $2,000,000 to the Dynasty Trust constitutes a constructive fraudulent transfer of NBV's interests for less than reasonably equivalent value in exchange for such transfer.

100.    At the time of the transfer, NBV (a) was engaged or about to engage in a business transaction for which its remaining assets were unreasonably small in relation to the business or

17

transaction; or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

101.    Pursuant to § 726.108(1)(a) and (c)3., Regions is entitled to avoid the transfer and recover damages against the Dynasty Trust for the amount received, plus interest and costs.

**Count IV**
**Claim against Dynasty Trust Pursuant to § 222.30**
**(Actual Fraudulent Transfer)**

102.    Regions reavers paragraphs 1-2, 5-8, 10, 13-67, and 84 in support of this count.

103.    This count seeks to avoid and recover an actual fraudulent transfer to the Dynasty Trust pursuant to § 222.30.

104.    The transfer of NBV's funds of $2,000,000 to the Dynasty Trust was an attempt to convert non-exempt assets into exempt assets with an intent to hinder, delay or defraud Regions, whose Claim arose before the transfer, and constitutes a fraudulent asset conversion as to Regions pursuant to § 222.30(2).

105.    Pursuant to § 222.30(3)(a) and (c)2., Regions is entitled to the avoidance of the transfer and damages against the Dynasty Trust for the amount received, plus interest and costs.

**Count V**
**Claim against the Family Trust Pursuant to § 726.105(1)(a)**
**(Actual Fraudulent Transfers)**

106.    Regions reavers paragraphs 1-2, 5-9, 13-67, 70, and 84 in support of this count.

107.    This count seeks to avoid and recover actual fraudulent transfers to the Family Trust pursuant to §§ 726.105(1)(a) and 726.108(1)(a) and (c)3.

108.    NBV Member's transfers of NBV's funds of $330,641.33 and $60,000 to the Family Trust were fraudulent as to Regions, whose Claim arose before the transfers were made,

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

because NBV caused NBV Member to make the transfers with actual intent to hinder, delay or defraud Regions.

109.     Pursuant to § 726.108(1)(a) and (c)3., Regions is entitled to the avoidance of the transfers and damages against the Family Trust for the amounts received, plus interest and costs.

**Count VI**
**Claim against the Family Trust Pursuant to § 726.105(1)(b)**
**(Constructive Fraudulent Transfers)**

110.     Regions reavers paragraphs 1-2, 5-9, 13-67, 70, and 84 in support of this count.

111.     This count seeks to avoid and recover constructive fraudulent transfers to the Family Trust pursuant to §§ 726.105(1)(b) and 726.108(1)(a) and (c)3.

112.     NBV Member's transfers of NBV's funds of $330,641.33 and $60,000 to the Family Trust constitute constructive fraudulent transfers of NBV's interests for less than reasonably equivalent value in exchange for such transfers.

113.     At the time of the transfers, NBV (a) was engaged or about to engage in a business transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

114.     Pursuant to § 726.108(1)(a) and (c)3., Regions is entitled to avoid the transfers and recover damages against the Family Trust for the amounts received, plus interest and costs.

**Count VII**
**Claim against the Family Trust Pursuant to § 222.30**
**(Actual Fraudulent Transfer)**

115.     Regions reavers paragraphs 1-2, 5-9, 13-67, 70, and 84 in support of this count.

116.     This count seeks to avoid and recover actual fraudulent transfers to the Family Trust pursuant to § 222.30.

19

117.    The transfers of NBV's funds of $330,641.33 and $60,000 to the Family Trust were an attempt to convert non-exempt assets into exempt assets with an intent to hinder, delay or defraud Regions, a creditor of NBV, and constitute fraudulent asset conversions as to Regions pursuant to § 222.30(2).

118.    Pursuant to § 222.30(3)(a) and (c)2., Regions is entitled to the avoidance of the transfers and damages against the Family Trust for the amounts received, plus interest and costs.

### Count VIII
### Claim against Scott Pursuant to § 726.105(1)(a)
### (Actual Fraudulent Transfer)

119.    Regions reavers paragraphs 1-2, 5, 13-67, and 84 in support of this count.

120.    This count seeks to avoid and recover an actual fraudulent transfer to Scott pursuant to §§ 726.105(1)(a) and 726.108(1)(a) and (c)3.

121.    NBV Member's transfer of NBV's funds of $200,000 to Scott was fraudulent as to Regions, whose Claim arose before the transfer was made, because NBV caused NBV Member to make the transfer with actual intent to hinder, delay or defraud Regions.

122.    Pursuant to § 726.108(1)(a) and (c)3., Regions is entitled to the avoidance of the transfer and damages against the Scott for the amount received, plus interest and costs.

### Count IX
### Claim against Scott Pursuant to § 726.105(1)(b)
### (Constructive Fraudulent Transfer)

123.    Regions reavers paragraphs 1-2, 5, 13-67, and 84 in support of this count.

124.    This count seeks to avoid and recover a constructive fraudulent transfer to Scott pursuant to §§ 726.105(1)(b) and 726.108(1)(a) and (c)3.

20

125.    NBV Member's transfer of NBV's funds of $200,000 to Scott constitutes a constructive fraudulent transfer of NBV's interests for less than reasonably equivalent value in exchange for such transfer.

126.    At the time of the transfer, NBV (a) was engaged or about to engage in a business transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

127.    Pursuant to § 726.108(1)(a) and (c)3., Regions is entitled to avoid the transfer and recover damages against Scott for the amount received, plus interest and costs.

## Count X
### Claim against Scott and Amy Pursuant to § 726.105(1)(a)
### (Actual Fraudulent Transfer)

128.    Regions reavers paragraphs 1-2, 5, 7, 13-67, and 84 in support of this count.

129.    This count seeks to avoid and recover an actual fraudulent transfer to Scott and Amy pursuant to §§ 726.105(1)(a) and 726.108(1)(a) and (c)3.

130.    NBV Member's transfer of NBV's funds of $16,000 to Scott and Amy was fraudulent as to Regions, whose Claim arose before the transfer was made, because NBV caused NBV Member to make the transfer with actual intent to hinder, delay or defraud Regions.

131.    Pursuant to § 726.108(1)(a) and (c)3., Regions is entitled to the avoidance of the transfer and damages against the Scott and Amy, jointly and severally, for the amount received, plus interest and costs.

## Count XI
### Claim against Scott and Amy Pursuant to § 726.105(1)(b)
### (Constructive Fraudulent Transfer)

132.    Regions reavers paragraphs 1-2, 5, 7, 13-67, and 84 in support of this count.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

133.    This count seeks to avoid and recover a constructive fraudulent transfer to Scott and Amy pursuant to §§ 726.105(1)(b) and 726.108(1)(a) and (c)3.

134.    NBV Member's transfer of NBV's funds of $16,000 to Scott and Amy constitutes a constructive fraudulent transfer of NBV's interests for less than reasonably equivalent value in exchange for such transfer.

135.    At the time of the transfer, NBV (a) was engaged or about to engage in a business transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

136.    Pursuant to § 726.108(1)(a) and (c)3., Regions is entitled to avoid the transfer and recover damages against Scott and Amy, jointly and severally, for the amount received, plus interest and costs.

### Count XII
### Claim against Scott and Amy Pursuant to § 222.30
### (Actual Fraudulent Transfer)

137.    Regions reavers paragraphs 1-2, 5, 7, 13-67, and 84 in support of this count

138.    This count seeks to avoid and recover an actual fraudulent transfer to Scott and Amy pursuant to § 222.30.

139.    The transfer of NBV's funds of 16,000 to Scott and Amy was an attempt to convert non-exempt assets into exempt assets with an intent to hinder, delay or defraud Regions, a creditor of NBV, and constitutes a fraudulent asset conversion as to Regions pursuant to § 222.30(2).

140.    Pursuant to § 222.30(3)(a) and (c)2., Regions is entitled to the avoidance of the transfer and damages against Scott and Amy for the amount received, plus interest and costs.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

### Count XIII
### Claim against GFS Pursuant to § 726.105(1)(a)
### (Actual Fraudulent Transfer)

141.    Regions reavers paragraphs 1-2, 12-67, 70, and 84 in support of this count

142.    This count seeks to avoid and recover actual fraudulent transfers to GFS pursuant to §§ 726.105(1)(a) and 726.108(1)(a) and (c)3.

143.    NBV Member's transfers of NBV's funds totaling $350,000 to GFS were fraudulent as to Regions, whose Claim arose before the transfers were made, because NBV caused NBV Member to make the transfers with actual intent to hinder, delay or defraud Regions.

144.    Pursuant to § 726.108(1)(a) and (c)3., Regions is entitled to the avoidance of the transfers and damages against GFS for the amounts received, plus interest and costs.

### Count XIV
### Claim against GFS Pursuant to § 726.105(1)(b)
### (Constructive Fraudulent Transfers)

145.    Regions reavers paragraphs 1-2, 12-67, 70, and 84 in support of this count.

146.    This count seeks to avoid and recover constructive fraudulent transfers to GFS pursuant to §§ 726.105(1)(b) and 726.108(1)(a) and (c)3.

147.    NBV Member's transfer of NBV's funds totaling $350,000 to GFS constitute constructive fraudulent transfers of NBV's interests for less than reasonably equivalent value in exchange for such transfers.

148.    At the time of the transfers, NBV (a) was engaged or about to engage in a business transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

149.    Pursuant to § 726.108(1)(a) and (c)3., Regions is entitled to avoid the transfers and recover damages against GFS for the amounts received, plus interest and costs.

**Count XV**
**Claim against Allen, Scott, Amy and Billy's Creek on NBV-Greenwald Release**
**Pursuant to §§ 726.105(1)(a)**
**(Actual Fraudulent Transfer)**

150.    Regions reavers paragraphs 1-2, 4-5, 7, 11, 13-67, 72-73, and 78-84 in support of this count

151.    This count seeks to avoid actual fraudulent transfers to Allen, Scott, Amy and Billy's Creek pursuant to §§ 726.105(1)(a) and 726.108(1)(a).

152.    The NBV-Greenwald Release constitutes transfers of NBV's interest to Allen, Scott, Amy and Billy's Creek and is fraudulent as to Regions, whose Claim arose before the transfers were made, because NBV made the transfers with actual intent to hinder, delay or defraud Regions.

153.    Pursuant to § 726.108(1)(a), Regions is entitled to avoidance of the transfers resulting from the NBV-Greenwald Release.

**Count XVI**
**Claim against Allen, Scott and Amy and Billy's Creek on NBV-Greenwald Release**
**Pursuant to §§ 726.105(1)(b)**
**(Constructive Fraudulent Transfer)**

154.    Regions reavers paragraphs 1-2, 4-5, 7, 11, 13-67, 72-73, and 78-84 in support of this count.

155.    This count seeks to avoid constructive fraudulent transfers to Allen, Scott, Amy and Billy's Creek pursuant to § 726.105(1)(b).

24

156.    The NBV-Greenwald Release constitutes transfers of NBV's interest to Allen, Scott, Amy and Billy's Creek for less than reasonably equivalent value in exchange for the transfers.

157.    At the time of the transfers, NBV (a) was engaged or about to engage in a business transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

158.    Pursuant to § 726.108(1)(a), Regions is entitled to avoidance of the transfers resulting from the NBV-Greenwald Release.

## Count XVII
### Claim Against Billy's Creek for Actual Fraudulent Transfer
### on Billy's Creek Satisfaction

159.    Regions reavers paragraphs 1-2, 11, 13-65, 72-73, and 84 in support of this count

160.    This count seeks to avoid an actual fraudulent transfer to Billy's Creek pursuant to §§ 726.105(1)(a) and 726.108(1)(a).

161.    The Billy's Creek Satisfaction constitutes a transfer of NBV's interest to Billy's Creek and is fraudulent as to Regions, whose Claim arose before the transfer was made, because NBV made the transfer with actual intent to hinder, delay or defraud Regions.

162.    Pursuant to § 726.108(1)(a), Regions is entitled to avoidance of the transfer resulting from the Billy's Creek Satisfaction

## Count XVIII
### Claim Against Billy's Creek for Constructive Fraudulent Transfer
### on Billy's Creek Satisfaction

163.    Regions reavers paragraphs 1-2, 11, 13-65, 72-73, and 84 in support of this count.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

164. This count seeks to avoid a constructive fraudulent transfer to Billy's Creek pursuant to § 726.105(1)(b).

165. The Billy's Creek Satisfaction constitutes a transfer of NBV's interest to Billy's Creek for less than reasonably equivalent value in exchange for the transfer.

166. At the time of the transfer, NBV (a) was engaged or about to engage in a business transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

167. Pursuant to § 726.108(1)(a), Regions is entitled to avoidance of the transfer resulting from the Billy's Creek Satisfaction.

**Count XIX**
**Claim Against Allen, Scott, Amy and Billy's Creek**
**for Conspiracy to Commit Fraudulent Transfers**

168. Regions reavers paragraphs 1-2, 4-5, 7, 11, 13-67, 72-73, and 78-84 in support of this count.

169. This count seeks damages against Allen, Scott, Amy and Billy's Creek for conspiracy to commit fraudulent transfers.

170. Allen, Scott, Amy and Billy's Creek conspired to conduct fraudulent transfers, *i.e.*, the NBV-Greenwald Release and the Billy Creek's Satisfaction, designed to avoid their obligations to NBV, and in turn, its creditor Regions, on the GFB-Lexi Loan and the Junior Loan and to insulate themselves from liability to Regions' substantial detriment.

171. In furtherance of the conspiracy, Allen, Scott, Amy and Billy's Creek entered into the NBV-Greenwald Release with NBV, and NBV delivered the Billy's Creek Satisfaction,

26

resulting in the fraudulent diversion of substantially all of NBV's assets without corresponding value, solely for the transferees' benefit, and to the detriment of NBV and Regions.

172.     As a result, Allen, Scott, Amy and Billy's Creek, the transferees of the fraudulent transfers, removed assets from the reach of Regions, NBV's creditor, which would have otherwise been available to pay the Supplemental Final Judgment.

173.     Regions has incurred damages as a result of the conspiracy.

WHEREFORE, Regions demands judgment as follows:

I.       On Count I, for a declaration pursuant to 28 U.S.C. § 2201 that NBV Member and Allen are liable, jointly and severally, as the alter egos of NBV for all amounts for which NBV is liable to Regions under the Supplemental Final Judgment, and money damages under § 2202.

II.      On Count II, pursuant to § 726.108(a) and (c)3., avoiding the transfer to the Dynasty Trust and awarding damages against it for the amount received, plus interest and costs.

III.     On Count III, pursuant to § 726.108(a) and (c)3., avoiding the transfer to the Dynasty Trust and awarding damages against it for the amount received, plus interest and costs.

IV.      On Count IV, pursuant to § 222.30(3)(a) and (c)2., avoiding the transfer to the Dynasty Trust and awarding damages against it for the amount received, plus interest and costs.

V.       On Count V, pursuant to § 726.108(a) and (c)3., avoiding the transfers to the Family Trust and awarding damages against it for the amounts received, plus interest and costs.

VI.      On Count VI, pursuant to § 726.108(a) and (c)3., avoiding the transfers to the Family Trust and awarding damages against it for the amounts received, plus interest and costs.

VII.     On Count VII, pursuant to § 222.30(3)(a) and (c)2., avoiding the transfers to the Family Trust and awarding damages against it for the amounts received, plus interest and costs.

27

VIII.      On Count VIII, pursuant to § 726.108(a) and (c)3., avoiding the transfer to Scott and awarding damages against him for the amount received, plus interest and costs.

IX.      On Count IX, pursuant to § 726.108(a) and (c)3., avoiding the transfers to Scott and awarding damages against him for the amount received, plus interest and costs.

X.      On Count X, pursuant to § 726.108(a) and (c)3., avoiding the transfer to Scott and Amy and awarding damages against them, jointly and severally, for the amount received, plus interest and costs.

XI.      On Count XI, pursuant to § 726.108(a) and (c)3., avoiding the transfer to Scott and Amy and awarding damages against them, jointly and severally, for the amount received, plus interest and costs.

XII.      On Count XII, pursuant to § 222.30, avoiding the transfer to Scott and Amy and awarding damages against them, jointly and severally, for the amount received, plus interest and costs.

XIII.      On Count XIII, pursuant to § 726.108(a) and (c)3., avoiding the transfers to GFS and awarding damages against it for the amounts received, plus interest and costs.

XIV.      On Count XIV, pursuant to § 726.108(a) and (c)3., avoiding the transfers to GFS and awarding damages against it for the amounts received, plus interest and costs.

XV.      On Count XV, pursuant to § 726.108(a) and (c)3., avoiding the transfers to Allen, Scott, Amy and Billy's Creek on the NBV-Greenwald Release.

XVI.      On Count XVI, pursuant to § 726.108(a) and (c)3., avoiding the transfers to Allen, Scott, Amy and Billy's Creek on the NBV-Greenwald Release.

XVII.      On Count XVII, pursuant to § 726.108(a) and (c)3., avoiding the transfer to Billy's Creek on Billy's Creek Satisfaction.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

XVIII.        On Count XVIII, pursuant to § 726.108(a) and (c)3., avoiding the transfer to Billy's Creek on Billy's Creek Satisfaction.

XIX.        On Count XIX, for damages against Allen, Scott, Amy and Billy's Creek, jointly and severally.

XX.        On all counts, for such other and further relief as may be available.

Dated:  October 12, 2021

**GARBETT, ALLEN & ROZA, P.A.**
Counsel to Regions
Brickell City Tower, Suite 3100
80 S.W. 8th Street
Miami, Florida 33130
Tel: (305) 536-8866

By:_____ /s/ Brian P. Yates_____
David S. Garbett, FBN 356425
dgarbett@garlawfirm.com
Philip A. Allen, III, FBN 338575
pallen@garlawfirm.com
Brian P. Yates, FBN 071257
byates@garlawfirm.com

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012