UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 21-23578-CIV-MORENO**

REGIONS BANK,

        Plaintiff,

vs.

NBV LOAN ACQUISITION MEMBER LLC,
et al.,

        Defendants.

_____/

## <u>ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTIONS TO DISMISS</u>

The plaintiff in this case, Regions Bank, became a judgment creditor of non-party NBV Loan Acquisition LLC in a Florida state bankruptcy action. Now, Regions brings nineteen different claims for alter ego, fraudulent transfer, and civil conspiracy against six defendants that are related to NBV Loan in various ways: Allen Greenwald, Scott Greenwald, and Amy Greenwald, collectively referred to as the Greenwalds, as well as NBV Loan Acquisition Member LLC, Billy's Creek Preserve LLC, and GFS Corp, collectively referred to as the Corporate Defendants. Scott and Amy are listed as defendants individually and as trustees of the Greenwald Family Trust and the Greenwald Dynasty Trust.

The Greenwalds and the Corporate Defendants both moved to dismiss the complaint. After Regions filed an amended complaint, both groups of defendants rernewed their motions to dismiss **(D.E. 30, 31)**. The Court has considered the motions, the response in opposition, the replies, pertinent portions of the record, and being otherwise fully advised in the premises, it is **ADJUDGED** that the motions are **GRANTED** in part and **DENIED** in part. Specifically, the

motions to dismiss are granted as to Counts XIV, XVI, and XVII, but are denied as to the remaining counts.

## I.    Background

Allen and Scott Greenwald are real estate developers who run The Greenwald Group.  In 2005, Scott began to develop "The Lexi," a condominium in Florida.  To fund the project, Lexi borrowed 56 million dollars from Regions and other banks ("the Bank Group")—referred to as the senior loan for the property.  Lexi also borrowed six million dollars from Scott's parents, named Allen and Jill Greenwald—referred to as the junior loan.  At that time, Regions and the Bank Group entered an "intercreditor agreement" with Allen and Jill which required that Regions provide notice to Allen and Jill if Lexi defaulted on the senior loan.  So in general, there are two loans: (1) the senior loan between Lexi and the Bank Group and (2) the junior loan between Lexi and Allen and Jill Greenwald.

To fund the junior loan, Allen and Jill borrowed six million dollars from Great Florida Bank.  After the loan was executed, Lexi, with Allen, Jill, and Great Florida Bank, modified it to extend the maturity date and also to require a two-million-dollar capital account.  Lexi obtained the funds for that capital account through a two million dollar advance on the junior loan, again financed by Allen and Jill through a loan from Great Florida Bank, bringing their debt to Great Florida Bank to eight million dollars total.  Allen and Jill later restructured their debts to Great Florida Bank by splitting the loan into two amended promissory notes, referred to as Note A and Note B, each worth four million dollars.

As a result of all this, the lines of debt to keep in mind were slightly modified.  Lexi owes 56 million dollars to Regions and the Bank Group.  Lexi also owes eight million dollars to

Scott's parents, Allen and Jill, who in turn are on the hook to Great Florida Bank for eight million dollars, which is divided in half and categorized as Note A and Note B.

A few years after Lexi's inception, a financial crisis devastated the United States and in particular its real estate market. Lexi defaulted on the senior loan during that time, though the parties do not specify the exact date.

By 2015, a new bank entered the picture. Florida Community Bank obtained Great Florida Bank's interest in the project and subsequently demanded payment of Note A from Allen and Jill. It was around then that Allen retained attorney Eric Salpeter. According to the complaint, Salpeter's mission was to form a limited liability company called NBV Loan Acquisition that would facilitate Allen's clandestine purchase of the Greenwald family's debts to Florida Community Bank at a discount. In other words, while Florida Community Bank was seeking the payment of Note A from Allen at the front door, Allen, through his attorney, would form a concealed corporate entity to go around the back door and purchase the debt from Florida Community Bank. Allen also wanted Florida Community Bank's interest in pending litigation against Regions and the Bank Group so that he could pursue a claim that it had initiated against the other banks involved with the senior loan, including Regions (more on that litigation later). To that end, Salpeter formed NBV Loan in Delaware in 2015 as an anonymous limited liability company. Though Allen remained undisclosed as a formal matter, he owned and controlled NBV Loan.

As NBV Loan's authorized representative, Salpeter then initiated negotiations with Florida Community Bank to purchase the Greenwald debt. Throughout this process Salpeter concealed Allen's interest in NBV Loan at Allen's direction. After a couple rounds of negotiation, Florida Central Bank accepted NBV Loan's offer for the Greenwald debt in

exchange for 3.9 million dollars. By December 2015, NBV and Florida Central Bank had consummated the transaction and all related debts were conveyed. An entity apparently bearing some relationship to the Greenwald family, named "GFS, Corp." provided 3.75 million dollars to NBV Loan to acquire the debt. Specifically, GFS made a series of cash transfers to Salpeter's trust account, who in turn transferred the cash to Florida Community Bank.

As a part of the transaction, Florida Community Bank asked that NBV Loan provide a document identifying NBV Loan's managers and members. Salpeter maneuvered this hiccup by forming "NBV Loan Acquisition Member LLC," a Florida limited liability company, which was represented to Florida Community Bank as the only member of NBV Loan. It was not until after the acquisition of the Greenwald debt and the substitution of NBV Loan as the party of record in the Lexi bankruptcy that Allen replaced Salpeter as the member and manager of NBV Member.

For these reasons and others, Regions alleges that NBV Loan was and is an empty shell, controlled by Allen to avoid and defraud creditors. NBV Loan has not issued member certificates, it does not file tax returns, and it does not report income or expenses. Instead, all of NBV Loan's income and expenses are claimed by NBV Member and reported on Allen's personal tax returns. With regularity, Allen used NBV Loan and NBV Member as his personal bank and used them for personal purposes, like paying his lawyers for his personal legal representation.

*State Litigation*

As mentioned above, Great Florida Bank sued the Bank Group for breach of the intercreditor agreement in 2010; specifically, it alleged that the Bank Group failed to provide notice of Lexi's default to Allen and Jill. After NBV Loan acquired the Greenwald debt, it was substituted for Florida Community Bank (which had since obtained Great Florida Bank's

interest) in the suit.[1]  This suit was eventually consolidated with the Lexi bankruptcy action.

NBV Loan settled the suit with all banks in the Bank Group except Regions.  In November 2016,

Regions served a proposed settlement to NBV Loan, which NBV Loan declined.  A bench trial

followed, after which the court entered judgment for Regions.  Because NBV Loan had rejected

the settlement offer and lost at trial, the court entered a supplemental final judgment for 3.7

million dollars in attorneys' fees and costs incurred in the litigation.

*Events Following the Settlement Offer and Supplemental Final Judgment*

Regions alleges that after both the settlement offer and supplemental final judgment, the

Greenwald family engaged in a series of transactions to ensure that NBV Loan would be

judgment proof.  In October 2017, Allen had NBV Member transfer substantial sums to the

Greenwald Dynasty Trust, the Greenwald Family Trust, Scott individually, and Amy

individually.  Following NBV Loan's June 2018 settlement with the other banks in the Bank

Group, NBV Loan received 825,000 dollars.  It then transferred those funds to GFS and the

Family Trust.  NBV Loan also satisfied a mortgage on "Billy's Creek," an entity apparently

affiliated with the Greenwald family.  Neither NBV Loan nor NBV Member received any value

in exchange for these transfers.  Also, Allen retained a law firm to represent him and his family

---

[1] There is a lack of clarity on the specifics here.  The Amended Complaint says that by "approximately September 2015, Florida Community Bank had succeeded to the interests of" Great Florida Bank, and it was from Florida Community Bank that NBV Loan acquired the Greenwald debt.  However, the Amended Complaint also indicates that Great Florida Bank sued the Bank Group in 2010 and that after the closing of the 2015 assignment of the Greenwald debt from Florida Community Bank to NBV Loan, "NBV substituted in place of [Great Florida Bank] in the underlying [bankruptcy] action."  Thus, it is not clear to the Court how NBV Loan substituted for Great Florida Bank and not Florida Community bank, if by that time NBV Loan had obtained the Greenwald debt from Florida Community Bank which had in turn obtained it from Great Florida Bank.  Because no party makes issue of it in the papers, the Court presumes that the exact chronology and formalities are immaterial for disposition of the motions to dismiss.

during the state court litigation.   Although the firm did not represent NBV Loan or NBV Member, NBV Member transferred NBV Loan funds to the firm for Allen's legal services.

Regions also alleges that the Greenwald family collaborated to transfer funds in anticipation of the supplemental final judgment.   Specifically, Allen, Scott, Amy, and NBV Loan entered a settlement that released all of the Greenwald-related debt.   The instrument recited consideration of ten dollars.

Regions brings this suit ultimately seeking the money it is owed under the supplemental final judgment.   Count I seeks a declaration that NBV Member and Allen are personally liable for all amounts owing under the supplemental final judgment.   Counts II through XVII are for actual and constructive fraudulent transfer against various members of the Greenwald family and related entities, related to various financial transactions that were mentioned above and will be discussed in greater detail below.   Count XIX is for conspiracy to commit fraudulent transfers against Allen, Scott, Amy, and Billy's Greek.

## II.    **Legal Standard**

The Greenwalds and the Corporate Defendants have moved to dismiss for failure to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).   To withstand such a motion, a complaint must allege sufficient factual matter that, if accepted as true, states a claim to relief that is plausible on its face.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 8(a).   In adjudicating a motion to dismiss, "factual allegations are accepted as true and construed in a light most favorable to the plaintiff; conclusory assertions and unwarranted deductions of fact are not."   *Worley v. Carnival Corp.*, 2022 WL 845467, at *1 (S.D. Fla. Mar. 22, 2022).

Litigants alleging fraud face a heavier burden.   Under Federal Rule of Civil Procedure 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting

6

fraud." A complaint satisfies this standard "by providing facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1277 (S.D. Fla. 2021) (simplified).

In this case, Rule 8(a) applies to the alter ego and constructive fraud claims, while Rule 9(b) applies to the actual fraud and civil conspiracy claims. *See Zhejiang Dushen Necktie Co. v. Blue Med, Inc.*, 2017 WL 4119604, at \*3-4 (S.D. Fla. Sept. 18, 2017); *Special Purpose Accts. Receivable Co-op. Corp. v. Prime One Cap. Co.*, 2007 WL 2826603, at \*5 (S.D. Fla. Sept. 25, 2007); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007).

## III.   Discussion

### A.   Collateral Estoppel

As a threshold matter, the Greenwalds argue that Count I, in which Regions seeks a declaratory judgment that NBV Loan and NBV Member were Allen's alter egos, is barred by collateral estoppel.  More specifically, the Greenwalds argue that the same alter ego and veil piercing arguments predicated on the identical assertion that Allen concealed his identity as a member of NBV Loan when he purchased the Great Florida Bank Loan were already made by Regions in its Motion to Disallow NBV's Vote on the Chapter 11 Plan and in its Objection to the Debtor's Plan for Reorganization.  The Greenwalds contend that the alter ego issue was fully briefed and litigated at a hearing where the bankruptcy judge concluded that Allen had not done anything illegal.  These findings were incorporated into the bankruptcy judge's Order Denying the Motion to Disallow or Designate NBV's Vote and the Order Confirming the Fourth Amended Chapter 11 Plan, which the Greenwalds attach to their motion to dismiss.  With that order, the Greenwalds attach several other documents from the bankruptcy record.  The

Greenwalds say that the Court may take judicial notice of these documents because they are public records.

The Court may judicially notice public records that are not subject to reasonable dispute. *Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1324 (M.D. Fla. 2011). In particular, a court may take notice of another court's order "for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of that litigation." *Id.* (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994)). Though the parties dispute the bankruptcy documents in that they characterize the proceedings differently, they do not dispute that the documents accurately reflect the proceedings themselves. The Court will therefore take judicial notice of the documents for the limited purpose of recognizing the "judicial acts" within and, to the extent possible, deciding the Greenwalds' collateral estoppel argument.

"In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court must apply the rendering state's law of preclusion." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). In Florida, "[c]ollateral estoppel applies where: 1) the parties are identical in the initial and subsequent action; 2) the issues are identical in the initial and subsequent action; and 3) the matter has been fully litigated in a court of competent jurisdiction." *Andela v. Univ. of Miami*, 692 F. Supp. 2d 1356, 1372 (S.D. Fla. 2010). The second element—identity of issues—is a question of "whether the facts or evidence necessary to maintain the suit are the same in both actions." *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. Dist. Ct. App. 2005) (citation omitted). Where the facts alleged to support the actions are not identical, identity does not exist, and collateral estoppel may not be applied. *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1076

(11th Cir. 2013) (citing *Tyson*, 890 So. 2d at 1208-09 for the proposition that "claims based on difference facts and evidence are not identical").

Identity lacks in this case. The Court has reviewed the documents attached to the Greenwalds' motion to dismiss. While they are correct that Regions raised alter ego-type arguments (albeit embedded in bankruptcy issues different than those in this case), Regions is correct to point out that the bankruptcy judge considered only NBV Loan's formation and acquisition of the Greenwald debt and NBV Loan's substitution in the bankruptcy proceedings. Neither NBV Loan's structure and operations nor the alleged fraudulent transfers are discussed or even referenced in the Motion to Designate, the Objection to Confirmation, the evidentiary hearing and following order, or the findings of fact and conclusions of law.

In short, Regions asserts claims in this case that are based on different facts and evidence than those raised in the bankruptcy proceeding. For that reason, there is no identity of issues. Collateral estoppel cannot be applied.

**B.   Failure to Join an Indispensable Party**

The Corporate Defendants raise a procedural argument of their owns: that NBV Loan is an indispensable party that Regions has not joined. Federal Rule of Civil Procedure 19 governs the required joinder of non-parties. There are two instances in which a non-party must be joined. The first is when the court cannot accord complete relief among the existing parties in the non-party's absence. Fed. R. Civ. P. 19(a)(1)(A). Second, a non-party must be joined if it claims an interest in the subject of the litigation and litigating without them will impair that interest as a practical matter or will leave an existing party exposed to substantial risk of multiple or inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B).

The Corporate Defendants argue that NBV Loan must be joined because its absence will impair and impede its rights. In their words, "NBV Loan has an interest in the subject of this action, mainly whether Plaintiff can pierce NBV Loan's corporate structure and hold its members liable for its debts." For this proposition, they do not cite anything other than the Delaware code section that governs liability for limited liability companies. Regions responds that a judgment debtor is not indispensable in an alter ego case. It further argues, citing *Ahmed v. Kifle*, that because NBV Loan is already liable for the supplemental final judgment, it isn't indispensable here. 728 F. App'x 934, 936 (11th Cir. 2018).

It does not appear that any circuit precedent clearly compels an answer to this question. Indeed, there is a dearth of analogous cases from this circuit and its district courts. Review of precedents from across the country reveals that some courts do hold that alleged alter egos are necessary parties under Rule 19. *See, e.g.*, *Cat Coven LLC v. Shein Fashion Grp., Inc.*, 2020 WL 3840440, at *5 (C.D. Cal. Mar. 12, 2020). Though it is not clear that this is a per se rule; instead, the rule seems applicable in those situations where "[t]here would be a significant risk of prejudice to the absent corporation if it was not joined, and the principal could not adequately substitute for the corporation as he may ignore questions of liability and instead focus his defense on showing that he is not the corporation's alter ego." *Id.* (simplified). Other courts have held that when the principal and alleged alter ego share interests that are near identical, creating a similarity of motive and ability to defend against an alter ego finding, the alleged alter ego is not an indispensable party. *See e.g.*, *Pujol v. Shearson Am. Exp., Inc.*, 877 F.2d 132, 135 (1st Cir. 1989).

Both lines of cases support a general rule that an alleged corporate shell is a necessary party when it has interests distinct of the principal that the principal is unlikely to adequately

defend.  And this understanding tracks closely the text of Rule 19, describing an indispensable party as one that, if not allowed to join, will have its interest impaired "as a practical matter." Fed. R. Civ. P. (a)(1)(B)(i).  On this understanding, case-by-case determination of indispensable parties takes the place of per se rule—at least in alter ego cases.

In this case, the Corporate Defendants have not met their burden to show that NBV Loan is indispensable.  They assert just one abstract interest: whether NBV Loan will have its corporate veil pierced.  Yet they do not explain how NBV Loan's ability to protect that interest would be impaired as a practical matter if not joined (or why Allen doesn't have the exact same interest).  Nor do they explain what real-world damage NBV Loan will suffer if its veil is pierced.  NBV Loan is already on the hook for the supplemental final judgment; that liability will remain no matter the outcome in this litigation.  All that might change is that NBV Member and Allen might also become liable.

In sum, there is no potential for adverse consequences to NBV Loan if it is not joined. To the extent that it does have an interest in maintaining its corporate veil, NBV Member and Allen are even more sensitive to that interest, as their liability is actually on the line.  NBV Loan is therefore not an indispensable party.  *Cf. Dernick v. Bralorne Res., Ltd.*, 639 F.2d 196, 199 (5th Cir. 1981);[2] *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011).

### C.      Alter Ego Merits

The next arguments concern the substance of Count I.  The Corporate Defendants argue that Regions has failed to state an alter ego claim because it has not alleged deliberate improper conduct or that NBV Loan was organized to mislead or defraud creidtors.  The Greenwalds add

---

[2] Decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981, are binding on this Court. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

that mere ownership of a corporation by a single shareholder—without fraud or improper purpose—is not enough to pierce the corporate veil. Not only has Regions only alleged conduct that isn't illegal, they say, but NBV Loan was also engaged in legitimate business operations: in particular, operations related to the Lexi bankruptcy action.

Under Florida's choice-of-law rules, the law of the state of formation applies in determining whether an entity's liability shield is pierced. *Upfitters, L.L.C. v. Brooking*, 2020 WL 954984, at *5 n.5 (M.D. Fla. Feb. 27, 2020). The parties appear to agree that the law of two states applies to this discussion: Florida law controls the claim seeking to hold NBV Member as an alter ego, and Delaware law controls the claim seeking to hold NBV Loan as an alter ego.

In Florida, a plaintiff must allege three things to state an alter ego claim. First, the defendant must have so dominated and controlled the corporation as to render it non-existent as an independent entity; second, the defendant must have used the corporate form to perpetrate some fraud or other improper conduct; third, that fraud must have caused injury to the plaintiff. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011); *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008). Because this case is at the motion to dismiss stage, Regions need only show that these elements are plausible. *Frayman*, 515 F. Supp. 3d at 1288.

Delaware law on piercing the corporate veil is similar but not identical. To create alter ego liability in Delaware, the plaintiff must show (1) that the corporation and its shareholders were functionally a single economic entity, and (2) that this created some injustice or unfairness. *Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC*, 2019 WL 148454, at *3 (D. Del. Jan. 9, 2019). Delaware courts consider several factors when deciding whether a corporation and its shareholder were effectively one entity: "(1) undercapitalization;

12

(2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders." *Id.* (simplified). In short, the plaintiff's allegations must render it plausible that the corporation existed for no other purpose than as a vehicle for fraud. *See Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).

The amended complaint contains allegations that comfortably satisfy these standards. Regions alleges that Allen retained an attorney to form NBV Loan to surreptitiously buy the Greenwald family debt at a discount and also to obtain and prosecute a non-meritorious claim against Regions, causing it to expend millions in attorneys' fees. Allen formed NBV Loan and NBV Member to conceal his identity during the acquisition of the debt, the prosecution of the claim against Regions, and the bankruptcy proceedings overall. Throughout the existence of NBV Loan and NBV Member, Allen has been the sole controller. He has used both as an instrumentality, transferring millions of dollars away to his family's entities to ensure that NBV Loan and NBV Member were judgment proof. So far, he has succeeded in that endeavor, causing direct harm to Regions, the judgment creditor. Finally, NBV Loan has no bank accounts, does not issue membership certificates, or file tax returns.[3]

---

[3] In support of their factual contention that NBV Loan is engaged in legitimate business, and therefore not an alter ego, the Greenwalds attach to their reply a copy of a garnishment judgment. The question at this stage is whether the allegations in the amended complaint, if true, are sufficient to state a claim. Whether, as a matter of fact, the allegations in the amended complaint are true is not before the Court. So the Court declines at this time to consider whether NBV Loan is engaged in legitimate business activities. The defendants are free, of course, to make this argument again at the summary judgment stage. Regions's motion to strike, (D.E. 46), filed on April 19, 2022, is thus denied as moot.

These allegations, construed in a light most favorable to Regions, state a plausible alter ego claim. *See Frayman*, 515 F. Supp. 3d at 1288-89 (denying motion to dismiss where defendant was sole member of alleged alter ego with few of its own assets and no independent existence that was used as a financial conduit to avoid creditors); *Reel Deal Yachts, Inc. v. Smith*, 2022 WL 579500, at *3 (S.D. Fla. Feb. 25, 2022) (denying motion to dismiss where defendant was sole owner of alleged alter ago that sold or transferred all assets shortly after it became liable to the plaintiff).[4]

### D.    Fraudulent Transfers

#### 1.

Both groups of defendants attack the actual fraudulent transfer counts on the ground that the complaint lacks allegations of fraudulent intent as to each specific transfer. They argue that to plead a claim for fraudulent transfer, the plaintiff must link a fraudulent intent to each transfer sought to be avoided. The complaint here, they say, contains only bare recitals of the elements.

Florida's fraudulent transfer statute provides that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer either with actual intent to hinder or defraud the creditor. Fla. Stat. § 726.105(1)(a). To state a claim under this statute, the creditor must allege that there was "(1) a creditor to be defrauded; (2) a debtor intending fraud; and (3) conveyance of property that could have been applicable to payment of the debt due." *Nat'l Mar. Servs., Inc. v. Straub*, 979 F. Supp. 2d 1322, 1327 (S.D. Fla. 2013). As just explained, the defendants' attack on these counts focuses on the second element.

---

[4] The Greenwalds also assert that "Regions does not even have standing to raise this issue" because NBV Loan's purchase of the debt "had nothing to do with Regions." That argument would have pull if the purchase of the debt were the only allegation in the amended complaint. But because the complaint contains many allegations of improper conduct that caused damage to Regions, as discussed in detail, the argument fails.

To find intent, courts consider what are commonly referred to as "badges of fraud," which are listed in the Florida Statute. *See id.* at 1328. They are as follows: the transfer was to an insider; the debtor retained possession or control of the property transferred after the transfer; the transfer was disclosed or concealed; before the transfer was made, the debtor had been sued or threatened with suit; the transfer was of substantially all the debtor's assets; the debtor absconded; the debtor removed or concealed assets; the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; the debtor was insolvent or became insolvent shortly after the transfer was made; the transfer occurred shortly before or shortly after a substantial debt was incurred; the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. Fla. Stat. § 726.105(2)(a)-(k).

In opposing the motions to dismiss, Regions points out that it has pled several of these badges. The complaint contains specific allegations that the transfers were to NBV Loan insiders (D.E. 29 ¶¶ 54, 68-79), that NBV Loan was sued before the transfers (by this, Regions is referring to the offer of settlement in the underlying action), that the transfers comprised substantially all of NBV Loan's assets (D.E. 29 ¶¶ 70-73), that NBV Loan received no value (D.E. 29 ¶¶ 75, 85), that NBV was insolvent shortly after the transfers (D.E. 29 ¶¶ 33, 92), and that the transfers were made after a substantial debt was incurred, (D.E. 29 ¶¶ 15-16). Most importantly, Regions has specifically pled that these transfers were an integral part of Allen's efforts to make NBV Loan and NBV Member judgment proof against Regions. (D.E. 29 ¶¶ 33, 68).

The Corporate Defendants and Greenwalds still insist that Regions has not made a "connection between the specific transfers" and "NBV Loan's actual fraudulent intent to keep

those transfers out of [Regions]'s reach." These arguments are conclusory and therefore unavailing. "Given the difficulties in establishing a transferor's actual intent, courts generally look at the totality of the circumstances and the 'badges of fraud' surrounding the transfers; while a single badge of fraud may create only a suspicious circumstance, several of them together may afford a basis to infer fraud." *In re PSI Indus., Inc.*, 306 B.R. 377, 387 (Bankr. S.D. Fla. 2003). Regions has alleged several badges here, which plausibly raises an inference of intent connected to the transfers. *See, e.g.*, *Nat'l Mar. Servs., Inc.*, 979 F. Supp. 2d at 1328-29 (transfer of all assets to insider while an action was pending enough to establish intent). That is enough as this early stage.

### 2.

The Greenwalds next attack Counts XV and XVI, which allege actual and constructive fraudulent transfers against Allen, Scott, and Amy. The Greenwalds urge that these counts be dismissed because Allen funded NBV Loan's purchase of the Greenwald debt with approximately four million dollars. For that reason, they say, NBV Loan did receive reasonably equivalent value for the release of the debt. In their view, it does not matter that the money provided to NBV Loan for the purchase technically came from GFS Corp because the inquiry under the Florida statute is whether the debtor received reasonably equivalent value—not whether the transferee provided that value. The Greenwalds further argue that because Scott and Amy provided only a limited guaranty of the loan, their liability was released with Allen's.

Regions responds in several ways. First, it argues that it does not allege in its complaint that Allen funded the purchase of the debt, so whether he in fact did so is not properly before the court at the pleading stage. Second, Regions points out that the complaint alleged that GFS wired the money directly to Salpeter for disbursement to Florida Central Bank; because Allen

has decided to conduct business with GFS as a corporation, he cannot assume the alter ego of that corporation and therefore stand in for its value.

On this point, each side raises thoughtful arguments. Though the Court questions what value NBV Loan received if it is the case that it disbursed 4 million dollars to acquire outstanding debt worth roughly the same amount, only to release it for nothing. Either way, whether reasonably equivalent value was received in a fraudulent transfer case is a question of fact that may not appropriately be adjudicated at the pleading stage. *See F.D.I.C v. Broder*, 2014 WL 353577, at \*7 (N.D. Ga. Jan. 31, 2014); *S.P. Richards Co. v. Hyde Park Paper Co., Inc.*, 2015 WL 6445663, at \*2 (M.D. Fla. Oct. 23, 2015). The Greenwalds' argument therefore fails.

However, the Corporate Defendants raise another argument. They point out that in Counts XIV, XVI, and XVIII, which allege constructive transfer, the complaint literally parrots the text of the constructive transfer statute with nothing more. Specifically, the Corporate Defendants argue that Regions does not allege either that they "engaged or [were] about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or "[i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due," as required by Florida Statute § 726.105(b)(1)-(2).

Regions apparently does not dispute that with respect to this part of the statute the complaint merely parrots its text. Rather, Regions points out that the heightened pleading standard of Rule 9(b) does not apply to constructive fraudulent transfer claims. Regions also argues that a constructive fraudulent transfer claim only needs to allege the parties, the approximate date of the transfer, the source of payment, and the transaction. For this

proposition, Regions cites a Georgia bankruptcy case interpreting a federal fraudulent transfer statute. *See In re Medici*, 524 B.R. 902, 907 (Bankr. N.D. Ga. 2014).

There are several problems with Regions's position. First, even if Rule 9(b) did not apply to the constructive fraudulent transfer claims, and only Rule 8's plausibility standard applied, the complaint still must allege some factual matter—a bare recitation of the statute is not enough. Second, Regions's cited authority—a district court case from another state, interpreting another statute—is not binding on this Court, and because it is disanalogous, it is not persuasive, either. Indeed, the proposition for which Regions cites the case appears squarely at odds with Florida law on fraudulent transfers as recognized by this district: "To state a claim for constructive fraud, a plaintiff must allege that a debtor made a transfer or incurred an obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his ability to pay as they became due." *Meridian Tr. Co. v. Batista*, 2018 WL 4760277, at *7 (S.D. Fla. Sept. 30, 2018). Because Regions does not support its allegations with any factual content at all, Counts XIV, XVI, and XVII are dismissed with prejudice.

### E.    Civil Conspiracy

Count XIX alleges civil conspiracy to commit fraudulent transfers against Allen, Scott, Amy, and Billy's Creek. The Defendants argue that this count should be dismissed for several reasons.

First, the Corporate Defendants argue that because Scott and Amy are "clearly agents of Billy's Creek," as a matter of law they cannot conspire with Billy's Creek, because a corporation

cannot conspire with its own agents. This is not "clear" to the Court, though. The Corporate Defendants do not say that the complaint identifies Scott and Amy as agents of Billy's Creek, and the Court will not adjudicate this issue of fact at the pleading stage.

Second, the Corporate Defendants argue that the complaint lacks specific allegations against Billy's Creek. A civil conspiracy claim must set forth specific allegations of conspiracy including the defendant's intent and the details of the alleged scheme. Yet here, the Corporate Defendants argue, the complaint only accuses Billy's Creek of receiving a satisfaction of the mortgage that it granted, which is not enough for civil conspiracy.

To state a claim for civil conspiracy in Florida, the plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159–60 (Fla. Dist. Ct. App. 2008) (simplified). "Each coconspirator need not act to further a conspiracy; each need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Id.* at 1160 (simplified). "The existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence." *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. Dist. Ct. App. 1987).

Here, Regions alleges enough to state a claim for civil conspiracy and to include Billy's Creek in that conspiracy. According to the complaint, the defendants—Scott, Allen, Amy, and Billy's Creek—agreed with NBV Loan to release their debt for no or almost no value and to release the Billy's Creek mortgage for no value. Because of that agreement and those actions,

the defendants completed fraudulent transfers to the detriment of Regions as NBV Loan's creditor.  Thus, the Corporate Defendants' arguments fail.

As to the Greenwalds, they argue that the civil conspiracy count must be dismissed because civil conspiracy is a derivative claim, and here, there is no actionable wrong underlying the conspiracy.  But because there are indeed underlying fraudulent transfers, for the reasons explained above, this argument fails.  Though some of the fraudulent transfer counts have been dismissed, some remain, and provide the grounds for the civil conspiracy count.

Second, the Greenwalds repeat the argument made above that Scott and Amy are agents of Billy's Creek and therefore cannot conspire with it.  For the reason explained above, this argument fails.

Finally, the Greenwalds argue that Florida law does not recognize a cause of action for conspiracy to commit a fraudulent transfer—at least not against a party "who allegedly assist a debtor" in a fraudulent transfer "where the person does not come into possession of the property."  The Greenwalds thus argue that because Allen, Scott, and Amy did not receive any property, the conspiracy claim must be dismissed.  This argument fails.  Although Regions does not allege that Scott, Allen, and Amy received transfers as a result of the Billy's Creek mortgage satisfaction, it does allege that they were transferees in the release of the Greenwald debt.  And there is a cause of action for fraudulent transfers under Florida law against transferees.  *See Landmark Bank, N.A. v. Cmty. Choice Fin., Inc.*, 2017 WL 4310754, at *18 (S.D. Fla. Sept. 28, 2017).

**IV.     Conclusion**

The motions to dismiss are granted as to Counts XIV, XVI, and XVII, but are denied as to the remaining counts.  The defendants shall file their answers to the amended complaint on or before May  23, 2022.

DONE AND ORDERED in Chambers at Miami, Florida, this of May 2022.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record