UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-23578-CIV-MORENO/GOODMAN

REGIONS BANK,

      Plaintiff,

v.

NBV LOAN ACQUISITION
MEMBER, LLC, et al.,

      Defendants.

_____/

## ORDER DENYING DEFENDANTS' *DAUBERT* MOTION

Defendants filed a *Daubert*[1] motion, seeking to exclude the opinion testimony of

Plaintiff's expert, Barry Mukamal. [ECF No. 164]. Plaintiff filed a response[2] [ECF No. 170]

and Defendants filed a reply [ECF No. 180]. Senior United States District Court Judge

Federico A. Moreno referred to the Undersigned all pretrial matters. [ECF No. 78]. For

the reasons discussed below, the Undersigned **denies** Defendants' *Daubert* Motion.

It is a well-established principle of law that "[w]here a trial judge conducts a bench

trial, the judge need **not** conduct a *Daubert* (or Rule 702) analysis before presentation of

---

[1]     *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2]     Plaintiff's response also addresses Defendants' motion *in limine* [ECF No. 163], which the Undersigned denied [ECF No. 193].

the evidence, even though [s]he must determine admissibility at some point." *Adams v. Paradise Cruise Line Operator Ltd., Inc.*, No. 19-CV-6114, 2020 WL 3489366, at \*3 (S.D. Fla. June 26, 2020) (quoting *Travelers Prop. Cas. Co. of Am. v. Barkley*, No. 16-61768-CIV, 2017 WL 4867012, at \*1 (S.D. Fla. June 2, 2017) (alterations in original) (emphasis added)). In fact, Judge Moreno recently endorsed this principle in the context of expert testimony which *might* rest on an unsound foundation, stating:

> In a bench trial, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005). As this is a bench trial, "[t]he Court is confident that it can discern testimony that seeks to make legal conclusions from testimony that provides the Court with background, context and industry knowledge that are traditionally supplied by experts . . . . Testimony that offers legal conclusions will be afforded no weight." *Apple Glen Inv'rs, L.P. v. Express Scripts, Inc.*, No. 8:14-cv-1527, 2015 WL 3721100, at \*4 (M.D. Fla. June 15, 2015) (internal quotation marks and citation omitted).
>
> Thus, although the Court has its reservations about the McCrory report, and even the Toney report, best practices dictate allowing the testimony to be heard and later discrediting any part found unpersuasive. In sum, the Court "is free to later decide to disregard testimony in whole or in part and/or to decide how much weight to give it." *GLF Constr. Corp. v. Fedcon Joint Venture*, No. 8:17-cv-1932, 2019 WL 7423552, at \*3 (M.D. Fla. Oct. 15, 2019).

*Jones Superyacht Miami, Inc. v. M/Y Waku*, 451 F. Supp. 3d 1335, 1346 (S.D. Fla. 2020).

Although Plaintiff cites this case -- and others supporting this principle -- in its opposition, Defendants make no effort in their reply to explain why the Court should depart from this standard in evaluating their *Daubert* challenge. Instead, Defendants merely repeat many of the same arguments which they raised in their initial motion,

effectively conceding the merits of Plaintiff's argument. *Conden v. Royal Caribbean Cruises Ltd.*, No. 20-22956-CIV, 2021 WL 4973533, at *7 (S.D. Fla. June 21, 2021) (finding that the defendant conceded counterarguments raised in the plaintiff's response by not addressing the counterarguments in its reply); *W. Flagler Assocs., Ltd. v. City of Miami*, 407 F. Supp. 3d 1291, 1297 (S.D. Fla. 2019) ("The [d]efendant abandoned its argument regarding the [p]laintiff's standing because its [r]eply failed to address any of the [ ] arguments or authority." (alteration added; collecting cases)); *Keepseagle v. Vilsack*, 102 F. Supp. 3d 205, 220 (D.D.C. 2015) (deeming arguments abandoned where the party failed to address in its reply brief the counterarguments raised by the opposing party on the issue).

Even though the Undersigned *could* deny Defendants' motion on only this ground, the Undersigned will briefly address the merits of Defendants arguments.

## I.     Legal Standard

The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993). Federal Rule of Evidence 702 governs the admission of expert testimony, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 582 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function "to ensure that

speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry: (1) whether the expert is qualified to testify competently; (2) whether the methodology used to reach the conclusions is sufficiently reliable; and (3) whether the testimony assists the trier of fact to understand the evidence or to determine a fact at issue. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

As an overarching principle, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey*, 298 F.3d at 1256. "In order to be admissible, an expert's testimony must be based on 'more than subjective belief or unsupported speculation.'" *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1167 (S.D. Fla. 1996)

(quoting *Daubert*, 509 U.S. at 590). There should be "[s]cientific method; good grounds and appropriate validation." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005).

Reliability of the methodology requires "an exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Rink*, 400 F.3d at 1292; *see also Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

These reliability factors, however, are non-exhaustive. *Kumho Tire*, 526 U.S. at 150; *Rink*, 400 F.3d at 1292. Thus, "[i]n evaluating the reliability of an expert's method . . . a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink*, 400 F.3d at 1293 n.7. The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004). The party proffering the expert also has the burden of "laying the proper foundation for the admission of the expert testimony . . . and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341. Thus, the district court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

A less-than-perfect expert opinion may still be admitted, even if it contains gaps. *See In re Trasylol Prods. Liab. Litig.*, No. 08–MD–01928, 2010 WL 1489793, at *6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.").

Furthermore, courts "must be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be accorded to such testimony by the fact finder." *Id.* at *7 (quoting *Quiet Tech DC–8, Inc.*, 326 F.3d at 1341).

If a case is proceeding as a bench trial, then the court's gatekeeper function is relaxed. While *Daubert* requires trial courts to act as "gatekeepers" to ensure a jury is not exposed to "speculative, unreliable expert testimony," *McCorvey*, 298 F.3d at 1256, these concerns "are greatly reduced when the expert will testify during a bench trial," *Exim Brickell LLC v. Bariven, S.A.*, No. 09-CV-20915, 2011 WL 13131317, at *4 (S.D. Fla. Mar. 11, 2011). As stated by the Eleventh Circuit, "[t]here is less need for the gatekeeper to keep

the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*,

415 F.3d 1257, 1269 (11th Cir. 2005).

**II.    Analysis**

Defendants raise three challenges to Mukamal's opinions: (1) Mukamal relies on

facts which are irrelevant to this case; (2) Mukamal's opinions arise from insufficient

factual analysis and are not the product of reliable principles and methods; (3) Mukamal's

opinions are mere statements of fact laced with attorney rhetoric. [ECF No. 164].

Defendants' arguments are not persuasive.

a.  Relevancy

Defendants challenge Mukamal's discussion of transactions which purportedly

occurred before the formation of NBV Loan. Defendants contend that these transactions

are not "remotely relevant to the issues of alter ego or piercing the corporate veil of NBV

Loan, as most of these transactions . . . took place prior to NBV Loan's formation."

Plaintiff counters that the transactions about which Defendants complain are not *opinions*

offered by Mukamal; the transactions are part of the underlying facts which Mukamal

relies on to support "his opinion that NBV Loan was inadequately capitalized and

operated in a manner resulting in insufficient assets to satisfy ordinary-course debts as

they became due."

In Plaintiff's view, Defendants' argument concerning the relevancy of these

transactions is a topic ripe for cross-examination, not exclusion. Defendants' reply offers

no new argument on this issue -- instead, Defendants repeat arguments raised in their initial motion.

The Undersigned agrees that this issue is best addressed during cross-examination. Concerns over an expert's inclusion or exclusion of particular facts should typically be addressed during cross-examination, rather than as a pre-trial challenge to the admissibility of an opinion. *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1345; *McGarity v. FM Carriers, Inc.*, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) ("[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under *Daubert*."); *Hightower v. Goldberg*, 2018 WL 296955, at *2 (M.D. Ga. Jan. 4, 2018) ("Defendants' objections go to the weight and credibility of Mr. Beauchamp's opinions, not their reliability. If Mr. Beauchamp failed to consider certain facts in forming his opinions, Defendants will be able to vigorously cross-examine him, present their own expert testimony, and tell the jury why they believe his opinion should not be believed."); *In re Mushroom Direct Purchaser Antitrust Litig.*, 2015 WL 5767415, at *6 (E.D. Pa. July 29, 2015) ("Courts have found that most contentions that [an expert's] assumptions are unfounded go to the weight, not the admissibility, of the testimony, and a district court has discretion . . . to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony.").

Defendants are free to challenge Mukamal by questioning him about his reasoning for including transactions which occurred before NBV Loan's formation and then to argue to the Court why Mukamal's testimony should be either partially or wholly rejected. Defendants' current pre-trial arguments, however, are insufficient to warrant exclusion.

b. Reliability

Defendants say that "Mukamal's opinion that NBV Loan was operating in a manner that resulted in insufficient capital to satisfy NBV Loan's obligations as they became due should be precluded because the basis for the finding is contrary to law." As support, Defendants highlight some of the facts which underpin Mukamal's conclusion that NBV Loan was undercapitalized and then claim that Mukamal fails to consider all factors necessary to reach that conclusion. Specifically, Defendants contend that any undercapitalization analysis requires the Court to "review a debtor's historic and contemporaneous business activities, relevant market data, the ebb and flow of income and expense over time, the availability of additional capital or lines of credit, the prospect for new business, and a variety of inter-related issues that affect whether the enterprise will continue."

Although Defendants state that these are factors which *the Court* must consider, they acknowledge that the undercapitalization inquiry is appropriate for expert testimony. Nonetheless, in Defendants' view, Mukamal's opinion that

> NBV Loan was undercapitalized because NBV Loan had no capital unless Allen or the Greenwalds provided it with capital to pay its debts when they were incurred . . . is flatly contradicted by the case law, which rejects this position, as in considering whether a debtor was left with unreasonably small assets, the Court must consider "all reasonably anticipated sources of operating funds, which may include new equity infusions, cash from operations, or cash from secured or unsecured loans over the relevant time period."

[ECF No. 164 (quoting *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1072 n.24 (3d Cir. 1992))].

Plaintiff does not dispute Defendants' recitation of the law. Instead, Plaintiff claims that Mukamal considers all factors which are necessary. As support, Plaintiff cites to sections of Mukamal's report in which he discusses NBV Loan's business activity (which was to sue Regions and Lexi, and to make a DIP loan), the ebb and flow of income and expenses (through analysis of NBV Member's bank statements and QuickBook records), and the sporadic infusion of cash from the Greenwalds. [ECF No. 170]. Plaintiff says that because NBV Loan was operated as "an empty shell," "it is unclear what other data Defendants contend Mukamal should have (or could [have]) review[ed]."

In their reply, Defendants indirectly clarify that their challenge to the reliability of Mukamal's testimony does not concern Mukamal's failure to consider a fact. Rather, Defendants' objection is based on their view that Mukamal discounted the value of the "anticipated" influx of funds from the Greenwalds. They say that "[n]othing in Mukamal's report demonstrates that the Greenwalds' funding, no matter how discretionary, was insufficient to support NBV Loan's business either at inception or after

each of the alleged transfers." [ECF No. 180]. Said differently, Defendants aren't challenging the underlying facts or even whether those facts should have been considered, they are challenging Mukamal's *conclusions and interpretations*.

As with Defendants' earlier argument, this issue is also better left for cross-examination. Defendants point to no additional evidence which Mukamal was required to rely upon nor any necessary factor which could have been considered but was not. Indeed, Defendants candidly admit that Mukamal discussed the cash NBV Loan received from the Greenwalds. The mere fact that Defendants share an opinion which is different than Mukamal's (i.e., whether NBV Loan could reliably depend on the Greenwalds' cash infusions or whether the discretionary nature of the Greenwalds' generosity means NBV could not reliably depend on this source of income) is insufficient to warrant exclusion.

As with their earlier objection as to the relevancy of certain facts, Defendants' ability to challenge these positions and connect Mukamal's assertions to relevant case law demonstrate that vigorous cross-examination is the appropriate means of testing Mukamal's opinions. *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1346 ("Because Frank's methods and results were discernible and rooted in real science—i.e., were "intellectual[ly] rigor[ous]," *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176—they were empirically testable. As such, they were subject to effective cross[-]examination and, indeed, were questioned vigorously by Quiet." (alterations in original)).

       c.  <u>Appropriate for Expert Testimony</u>

In their final argument, Defendants claim that Mukamal's observations concerning many of NBV Loan's releases of collateral and guarantees are "summaries of fact, not opinion, [for] which the Court needs no assistance." [ECF No. 180]. Plaintiff responds that "Defendants miss the point; Mukamal is not opining that NBV Loan did not collect Notes A and B, which is an undisputed fact; Mukamal is opining that NBV Loan's decision not to collect Notes A and B supports his opinion that NBV Loan was inadequately capitalized." [ECF No. 170].

When confronted with this argument, Defendants state in a conclusory fashion that "Mukamal's statements are not analysis as to NBV Loan's undercapitalization, but rather advocacy, which is inadmissible." However, as advanced by Defendants in their earlier argument, the Court may consider "cash from secured or unsecured loans over the relevant time period" in assessing whether a corporation is undercapitalized. Thus, NBV Loan's decision to not collect on an available loan certainly seems -- at a minimum-- to be a relevant detail which Mukamal may consider.

If Defendants' argument were taken to its logical conclusion, then an expert could never testify about any of the facts which support her opinions unless the facts themselves required expert testimony. Thus, in a negligence case where a video shows an individual slipping and striking his head on the concrete, a medical expert would be precluded from referencing this fact in assessing the types of injuries the individual suffered because mentioning the fact "merely recites record evidence."

The cases which Defendants cite fail to support this extreme position. For example, in support of their argument that "Mukamal's statements are not analysis as to NBV Loan's undercapitalization, but rather advocacy, which is inadmissible, Defendants cite to *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) and attribute to it, in a parenthetical, the following principle: "finding that 'the earlier, the better' theory was 'too vague' to assist the trier the [sic] fact. Indeed, the notion of early treatment is well within common knowledge." However, a review of *McDowell* reveals that the Eleventh Circuit's analysis was not focused on whether there were statements of fact masquerading as expert testimony -- as Defendants allege here -- it was on the failure to connect the testimony to a relevant issue:

> The district court was correct in finding that "the earlier, the better" theory was "too vague" to assist the trier the [sic] fact. Indeed, the notion of early treatment is well within common knowledge that would be obvious to the average juror, but has nothing to do with causation. Dr. Merinkangas himself stated that "the sooner, the better" is "just simply common understanding, and doesn't rise to the level where someone would bother reporting that because everyone knows that." As such, this "the earlier, the better" theory adds nothing absent some testimony connecting the delay to the causation or aggravation of an injury.

392 F.3d at 1299-1300.

Here, unlike the expert in *McDowell*, Mukamal has connected these facts to his ultimate conclusion. The fact that Defendants disagree with the conclusion or disagree with the relevancy of certain facts is insufficient to warrant exclusion of any portion of Mukamal's testimony.

Further, as noted above, this is a bench trial, which means there is no danger of a

jury being prejudicially swayed by the admission of expert testimony. For these reasons,

the Undersigned **denies** Defendants' motion.

**DONE AND ORDERED**, in Chambers, in Miami, Florida, on March 22, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record